IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

01 JUN 15 PM 1:56

BENJAMIN CRENSHAW,         )
                           )
     Plaintiff,            )
                           )   Civil Action No.   **ENTERED**
v.                         )
                           )   00-AR-1348-S       JUN 15 2001
                           )
SAMSONITE COMMERCIAL       )
FURNITURE, INC.,           )
                           )
     Defendant.            )

## MEMORANDUM OPINION

Before the court is defendant's motion for summary judgment. Plaintiff, Benjamin Crenshaw ("Crenshaw"), alleges that his employer, defendant, Samsonite Commercial Furniture, Inc. ("Samsonite"), violated his rights under 42 U.S.C. § 1981 by failing to promote him because of his race and by creating a racially hostile work environment. He also alleges that Samsonite has retaliated against him for complaining about some of the alleged harassment that created the hostile work environment. Samsonite says that it is entitled to summary judgment as to all claims. For the reasons set forth in the opinion below, Samsonite's motion is due to be granted as to Crenshaw's retaliation and hostile work environment claims. In all other respects, Samsonite's motion is due to be denied.



**Undisputed Material Facts**

The court finds the following uncontested and/or alleged facts to be relevant to the grant of summary judgment of Crenshaw's retaliation and hostile work environment claims.

Crenshaw began working for Samsonite in September, 1997 as a laborer/materials handler on the paint line in Samsonite's furniture manufacturing facility in Birmingham, Alabama. He alleges that before his transfer to the plant's fabrication department in 1998, the lead man on the paint line, Kent Smith ("Smith"), harassed him by giving preferential treatment in work assignments and working conditions to white paint line workers; by doing away with an equitable job rotation system implemented for the paint line after Crenshaw complained to the vice-president for operations, Gary Deason ("Deason"), about Smith's handling of the paint line; and by informing Crenshaw that he, Smith, gave African-Americans the difficult job assignments because Smith was a racist. Crenshaw also alleges that co-workers told him that Smith had referred to black workers at the plant as "black ass niggers" and "sorry ass niggers" and that when he complained of Smith's remarks to Deason, Deason did not believe him. Finally, Crenshaw asserts that after complaining about Smith's remarks, Smith made the paint

2

line job harder for blacks. Smith denies Crenshaw's allegations, and Deason states that he confronted Smith about the reported remarks and warned him that such conduct would result in discharge.

Although Crenshaw testifies that he was subject to racial harassment by Smith only prior to Crenshaw's transfer to the fabrication department, Pl.'s Dep. at 92, he also details subsequent incidents of alleged harassment, apparently all, or most of which, occurred after Crenshaw returned to work in October, 1999 following recovery from an injury. Pl.'s Dep. at 104-111. These later alleged acts of harassment consisted of Smith threatening Crenshaw with discharge on two or three occasions if he did not operate a machine that Crenshaw states he could not operate because of his medical condition and/or because of a machine malfunction; Smith writing him up, but not white co-workers, for tardiness; and Deason yelling at him for being late when the tardiness was not Crenshaw's fault but was caused by an intermediate supervisor's mis-communication. Pl.'s Dep. at 104-111.

Regarding Crenshaw's retaliation allegations, over approximately five pages of testimony, he details Samsonite's alleged acts of retaliation, all of which occurred while Crenshaw was on the paint line. Pl.'s Dep. at 93-98. The final exchange between Samsonite's counsel and Crenshaw on page 98 reads as

3

follows:

> "Q. Anything else you can think of [regarding the retaliation claim]?
> A. Not right now. I'm pretty sure there's some more stuff, I just can't think of it right now."

In his affidavit, Crenshaw does not set forth any additional facts that would expand the time frame of the grounds for his retaliation claim.

According to Jane Evans ("Evans"), administrative assistant to Deason, Crenshaw was transferred to the fabrication department on May 2, 1998. Evans Aff. ¶ 5. In deposition, Crenshaw says that he did not know when the move took place, Pl.'s Dep. at 39, 77-78, but he also, directly or indirectly, indicates that it occurred later than May 2, 1998, Pl.'s Dep. at 39; Pl.'s Aff. ¶ 10. Evans's affidavit was submitted in support of Samsonite's motion. Crenshaw, in his affidavit and memorandum of law in support of his opposition to the motion, does not mention, much less contradict, Evans's statement regarding the transfer date.

The third ground for relief alleged by Crenshaw is disparate treatment based on Samsonite's failure to promote him on two occasions. The first occurred in June, 1998, when Smith was moved into the newly created quality control position. The second occurred in October, 1998, when Randall Phillips was made set-up

4

man.  Crenshaw filed this action on May 18, 2000.

## Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The Supreme Court has emphasized that this language means exactly what it says: there must be a <u>genuine</u> issue of <u>material</u> fact, not merely some factual dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986).  What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).

## Discussion

Borrowing the statute of limitation for state law actions brought under Ala. Code § 6-2-38(l), the Eleventh Circuit has

5

applied a two year statute of limitation to 42 U.S.C. § 1981 actions brought in federal courts in Alabama. *See Peterson v. BMI Refractories*, 132 F.3d 1405, 1414 n.16 (11th Cir. 1998); *see also, e.g., Malone v. K-Mart Corp.*, 51 F.Supp.2d 1287, 1304 (M.D.Ala. 1999). Applied to the facts of this case, that time restriction forecloses Crenshaw's retaliation claim and so diminishes his harassment claim as to leave it unable, as a matter of substantive law, to survive summary judgment.

### A.  Retaliation

Because a two year statute of limitation applies to Crenshaw's cause of action, any basis for relief that accrued prior to May 18, 1998 is time-barred.[1] All of the acts of alleged retaliation that Crenshaw clearly identifies occurred prior to his transfer from the paint line to the fabrication department.[2] Furthermore, Evans unequivocally declares that the transfer occurred on May 2, 1998.

---

[1] Crenshaw has made no arguments based on equitable tolling or continuing violation theories.

[2] It is unclear whether Crenshaw meant to imply by his answer to the last question by Samsonite's counsel regarding the retaliation claim that other retaliatory acts occurred after he left the paint line. Even if he did, such a response cannot in effect provide him a blank check regarding the scope of his retaliation claim. Crenshaw was given every opportunity to explain the factual basis for the claim. He cannot simply expand that basis as it occurs to him.

Putting two and two together, then, Samsonite predictably argues that even if Samsonite retaliated against Crenshaw as alleged, Crenshaw waited too long to seek redress for the said allegedly retaliatory acts.  In response, Crenshaw simply by-passes or ignores this argument.  Instead, he concentrates on Samsonite's alternative arguments that go the merits of his retaliation claim.  Of course, whoever gets the better of the arguments on the merits does not change the fact that the claim is barred by the statute of limitation if there is no genuine issue regarding the fact that May 2, 1998 was the transfer date.  It is true that Crenshaw hopefully suggests that the transfer may have occurred after May 2, 1998, but he also claims ignorance of the date.  In any event, he does not address, let alone dispute, Evans's statement, which is pointedly relied on by Samsonite both in its original and in its reply brief.  No reasonable juror could infer from Crenshaw's failure to address a fact unmistakably material to his claim of retaliation that Crenshaw genuinely contests the factual basis of Samsonite's statute of limitation argument.  Therefore, this "dispute" of material fact is not worthy of the label "genuine".  With the transfer date undisputed, summary judgment on Crenshaw's claim of retaliation is clearly called for.

**B.   Hostile Work Environment**

A hostile work environment claim is actionable under § 1981 as under Title VII. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1008 n.17 (11th Cir. 1997); *see also Holiness v. Moore-Handley, Inc.*, 114 F.Supp.2d 1176, 1186 (N.D.Ala. 1999) (Buttram, J.). A plaintiff claiming to have encountered a hostile work environment because of his race must show (1) that he belongs to a protected group; (2) that he has been subject to harassment; (3) that the harassment must have been based on his race; (4) that the harassment was so severe or pervasive as to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999). Even though the "severe or pervasive" element usually presents the highest hurdle for plaintiffs, before a court examines whether that fourth element is met it should determine whether the remarks or conduct are racial in nature. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). This third element must be evaluated in light of the rationale for holding an employer liable under a hostile work environment theory: an implied "term, condition, and privilege of employment" is "the right to work in an

environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399 (1986); *see Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1521-22 (11th Cir. 1995).

As with Crenshaw's retaliation claim, Samsonite seeks to deflate Crenshaw's hostile work environment claim on the basis of the applicable statute of limitation. Thus, Samsonite contends that Crenshaw cannot recover on the basis of any harassment that occurred prior to May 18, 1998. Crenshaw suggests, without citation, that Samsonite's argument is unavailing because Crenshaw has suffered adverse treatment at the hands of Smith and Deason "[t]hroughout his employment with Samsonite". Even if this conclusory statement is true, it fails to explain why the two-year statute of limitation did not begin to run by May 18, 1998 or why the statute of limitation should be equitably tolled. Therefore, Crenshaw is barred by the applicable statute of limitation from recovering on his hostile work environment claim insofar as the claim is based on harassment that he alleges occurred prior to May 18, 1998.

Left with only the post-May 18, 1998 acts of Smith and Deason to support his allegation of a hostile work environment, Crenshaw

cannot survive summary judgment on the environment claim because the non-barred acts are not overtly racially discriminatory. Crenshaw, of course, disagrees. He argues that even if the pre-May 18, 1998 acts cannot themselves form the basis for relief, they nevertheless show, circumstantially, that post-May 18, 1998 friction between Crenshaw and either Smith or Deason stemmed from the latter two's racism.  In support, he cites *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291 (11th Cir. 1998), for the proposition that time-barred conduct may be considered circumstantial evidence of a decision maker's discriminatory attitude.  However, *Ross* dealt with the issue of whether such evidence could be used by the plaintiff to show pretext within the *McDonnell Douglas* burden-shifting framework used for assessing claims of disparate treatment, and therefore is not on-point.  In disparate treatment claims, the injury flows from covert discrimination that has an overt, adverse impact. In contrast, as explained in *Meritor*, a hostile work environment inflicts injury by virtue of the very openness of the discriminatory attitude that lies hidden in the context of disparate treatment.  That is, a plaintiff pursuing a hostile work environment claim must show more than a discriminatory attitude at work behind the scenes; he must

show that such an animus has come out of the closet with an obviousness, frequency, and severity that infringes his "right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65.

Because the essence of a hostile work environment claim is the overtness of the discrimination, most such claims are based on communication, usually verbal, but sometimes written or physical, that in its content unmistakably denigrates the offended employee because he or she belongs to a protected group. Here, the post-May 18, 1998 conduct of Smith and Deason include no communication of any kind regarding their views as to the protected group to which Crenshaw belongs. Moreover, the pre-May 18, 1998 actions, as alleged, do not imbue the post-May 18, 1998 circumstances of conflict between Crenshaw and either Smith or Deason with a racial hostility that the later conflicts overtly lack. Therefore, even if Smith's and Deason's conduct subjected Crenshaw to "intimidation, ridicule, and insult", he has not shown that their acts were overtly discriminatory.

### Conclusion

Based on this analysis, a separate and appropriate order will be entered.

11

DONE this 15th day of June, 2001.

/s/ William M. Acker, Jr.
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE